IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| COY J. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-3021 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Coy Thomas appeals the Commissioner's denial of his application for disability insurance benefits under the Social Security Act. This Court has jurisdiction. 42 U.S.C. § 405(g). The parties have filed cross-motions for summary judgment. Plaintiff's Motion for Summary Judgment or Remand (d/e 9); Defendant Commissioner's Motion for Summary Affirmance (d/e 11). For the reasons set forth below, the Decision of the Commissioner's Motion for Summary Affirmance is ALLOWED and Thomas' Motion for Summary Judgment or Remand is DENIED. The Decision of the Commissioner is affirmed.

1

STATEMENT OF FACTS

Thomas was born on June 9, 1947. He is a veteran of the Vietnam War. Thomas retired in 1997 from an oil changing business that he owned. He has not performed substantial gainful activity since 1997. His eligibility for Disability Benefits expired on December 31, 2002. He applied for benefits in January 2004. Thomas alleged that he became disabled on March 15, 2002. Certified Record of Proceedings before the Social Security Administration (d/e 6) (R.), at 65-66, 802.

The medical evidence shows that on January 3, 2002, blood tests showed a white blood cell count of 26,700 with a preponderance of lymphocytes. R. 123. A repeat blood test on February 25, 2002, showed 42,400 lymphocytes at a level of 85% consistent with chronic lymphocytic leukemia (CLL). On March 5, 2002, Thomas was seen by a cancer specialist, James R. Enger, M.D. Thomas reported sleeping and eating okay. Thomas denied fevers, sweats, or chills. Thomas stated that his weight was increasing. Thomas did not feel sick. Thomas stated that he had recently engaged in sawing and splitting wood to sell. On examination, Dr. Enger found no clinical abnormalities. Dr. Enger ordered more tests that confirmed the diagnosis of CLL. R. 123.

Thomas saw Dr. Enger again on March 12, 2002. At that time, Thomas denied having any colds, flu, fevers, sweats, or chills. R. 119. Dr. Enger saw Thomas again on March 14, 2002, and April 16, 2002. Thomas reported no difficulty eating, drinking or sleeping. During the April 16, 2002, examination, Thomas reported that he had enough energy to go turkey hunting. Dr. Enger again found no clinical abnormalities on examination. Dr. Enger diagnosed Thomas with stage 0 CLL, the lowest risk stage. R. 117-18.

Dr. Enger saw Thomas again on June 25, 2002. Thomas again denied having any colds, flu, fevers, sweats, or chills. Thomas had no difficulty eating, drinking, or sleeping. On examination, Dr. Enger reported no clinical abnormalities. R. 116.

Thomas decided to have his cancer treated at a Veterans Administration (VA) hospital. Thomas believed that his condition was related to exposure to Agent Orange during the Vietnam War. R. 112. On September 17, 2002, a blood test taken at a VA facility showed that Thomas had CLL. R. 132.

The record contains no further medical evidence of Thomas' condition prior to December 31, 2002, the date that his eligibility for Disability

3

Benefits expired. State agency physician, Harry F. Roha, M.D., reviewed Thomas' medical records through December 31, 2002, and concluded that he had no serious impairment as of that date. R. 138.

Thomas' medical records for 2003 and thereafter, however, show that his condition worsened. In January 2003, Thomas had a rash and swelling in his neck and axilla. In April and May 2003, Thomas reported increased fatigue and skin changes with eruptions on his scalp, ears, and neck. His condition worsened substantially after that. He has developed numerous tumors in various part of his body, including basil and squamous skin cancers. He has also undergone several courses of chemotherapy.

The Administrative Law Judge conducted an evidentiary hearing on January 23, 2007. Thomas and Vocational Expert James Lanier, PhD., testified. Thomas testified that he started feeling fatigued in 2002. R. 821-22. He stated that late in 2002, he was tired all the time and had problems sleeping at night with hot flashes. R. 823-24. He slept on the couch at his former residence at the time because it was not worth the effort to go upstairs to his bedroom. R. 825.

Thomas testified that the last time he went hunting was in 2002. He stated that it took him 45 minutes to get up a small hill. R. 805. He played

golf 10 to 15 times in 2004, but did not play more than three times during the year before the hearing. R. 805-08. He stated that he went fishing two to three times a year if someone would take him. R. 810. He did his own cooking, laundry and dishes, but others shopped for him and maintained his yard. R. 812-14.

Lanier then testified. The ALJ asked Lanier to assume an individual of Thomas' age, education, and work experience who was limited to light work with no climbing of ladders, ropes or scaffolds. R. 833-34. The ALJ asked Lanier whether such an individual could perform Thomas' past work at an automobile lube service center. Lanier concluded that he could not perform his prior work because the job required climbing ladders. R. 834-35. The ALJ then asked whether such a person could perform other work in the national economy. Lanier opined that such a person could work light, unskilled jobs such as an interviewer or information clerk. Lanier stated that there were 3,972 interviewer jobs in Illinois, and 3,327 information clerk jobs in Illinois. R. 836. Lanier opined that these jobs could not be performed with a sit/stand option.

The ALJ issued his Decision on February 2, 2007. R. 12-16. The ALJ followed the five-step analysis set forth in the Social Security

Administration regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Such severe impairments are set forth in the Listings. 20 C.F.R. Part 404 Subpart P, Appendix 1. The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner

has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995). The ALJ found that Thomas met the requirements at Step 1 because he was not engaging in substantial gainful activities.

The ALJ, however, found that Thomas failed to prove that he had a severe impairment at Step 2. The ALJ determined that Thomas did not show that he had a severe impairment at any time from March 15, 2002, the date that Thomas alleged his disability began, through December 31, 2002, the date that Thomas' eligibility for Disability Benefits expired. The ALJ stated that an impairment is severe "if it significantly limits an individual's ability to perform basic work activities." R. 13 (citing 20 C.F.R. § 404.1521; SSR 85-28, 96-3p, and 96-4p). The ALJ found that no medical evidence showed that Thomas' condition limited his ability to perform work activities before December 31, 2002. The examinations in 2002 showed no problems with fatigue, cold, flu, sweats, or chills. Thomas was engaging in a wood splitting business in March 2002. The ALJ noted that Thomas had enough energy to go turkey hunting in 2002. R. 15. At the last 2002

medical visit in June, Thomas was asymptomatic. The ALJ also noted that Dr. Roha opined that Thomas had no severe impairments through December 31, 2002. The ALJ found that the objective medical evidence did not support Thomas' allegations of fatigue prior to December 31, 2002. The ALJ, therefore, concluded that Thomas failed to meet his burden of proof at Step 2, and found that he was not disabled. R. 16.

## ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally her analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's Decision is supported by substantial evidence. The ALJ

determined that the evidence showed that Thomas' medical condition did not affect his ability to work prior to December 31, 2002. All of the medical evidence supported this finding. In addition, Thomas engaged in various physical activities, such as splitting wood and hunting. All this evidence supports the ALJ's conclusion that on or before December 31, 2002, Thomas' CLL had no material impact on his ability to work. The ALJ's determination that Thomas failed to meet his burden at Step 2 is supported by substantial evidence.

Thomas argues that the ALJ failed to follow the Commission's procedures for determining when his condition reached the point of imposing a severe impairment on Thomas (the Onset Date). In determining the Onset Date, the ALJ must consider his allegations, his work history, and the medical evidence. SSR 83-20. The date that Thomas alleged to be the Onset Date should be used if it is consistent with the other evidence. The Onset Date, however, "can never be inconsistent with the medical evidence of record." Id.

In this case, Thomas alleged his Onset Date was March 15, 2002. Thomas retired in 1997, so he has no work history evidence to support or contradict that date. The ALJ concluded that the medical evidence

9

contradicts that date. Substantial evidence in the record supports this conclusion. The medical evidence showed no manifestations of any impairments on Thomas' ability to work in 2002. The 2002 examinations showed no manifestations of symptoms from the CLL that would affect Thomas' ability to work. The evidence, therefore, supports the ALJ's rejection of Thomas' allegation of the Onset Date, and the ALJ's conclusion that Thomas failed to show a severe impairment before the end of 2002.

Thomas argues that the ALJ was required to take additional medical evidence to determine the Onset Date. The Court disagrees. The ALJ should seek additional medical evidence if the Onset Date appears to have occurred before the first recorded medical examination. SSR 83-20. In this case, however, Thomas was examined in February and March 2002, before Thomas' alleged Onset Date of March 15, 2002. These examinations support the ALJ's conclusion that he had no symptoms at that time that would impair his ability to work. Thus, the ALJ did not err in deciding not to secure additional medical evidence on this issue.

Thomas also argues that the ALJ improperly relied on Dr. Roha's opinion. The Court disagrees. The ALJ used Dr. Roha's opinion as additional evidence that was consistent with Dr. Enger's examinations in

2002 that showed that Thomas had no symptoms that affected his ability to work. The ALJ used this evidence properly.

Finally, Thomas argues that the ALJ improperly failed to make credibility findings. The Court agrees that the ALJ could have been more explicit in making his credibility findings. The Court, however, can track the ALJ's analysis of credibility. The ALJ found that Thomas' claims of fatigue and impairment starting in March 2002, were inconsistent with the medical evidence. The ALJ, therefore, rejected Thomas' testimony. The Court will not disturb this credibility determination. The ALJ's observation is also consistent with the instructions in SSR 83-20 that the Onset Date can never be inconsistent with the medical evidence. The alleged March 15, 2002, Onset Date is inconsistent with the examinations of Thomas in March and June 2002. In both those examinations, Dr. Enger found that Thomas did not have any symptoms that would impair his ability to work. The ALJ properly concluded that the Onset Date could not be March 15, 2002, as alleged by Thomas. The ALJ's determination is supported by substantial evidence.

THEREFORE, the Commissioner's Motion for Summary Affirmance (d/e 11) is ALLOWED, and Plaintiff's Motion for Summary Judgment or

Remand (d/e 9) is DENIED. Summary judgment is entered in favor of Defendant Commissioner of Social Security and against Plaintiff Coy Thomas. The Decision of the Commissioner is AFFIRMED. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: December 19, 2008

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE